UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PAULINE A. BRADY, et al., | ) | Lead Case: 4:18-cv-01440-JAR |
| | ) | |
| Debtors, | ) | Consolidated Cases: |
| | ) | *In re Long*, 4:18-cv-01441-JAR |
| | ) | *In re Beard*, 4:18-cv-01442-JAR |
| ROSS H. BRIGGS | ) | *In re Moore*, 4:18-cv-01443-JAR |
| | ) | *In re Logan*, 4:18-cv-01444-JAR |
| Appellant, | ) | *In re Stewart*, 4:18-cv-01445-JAR |
| | ) | *In re Shields*, 4:18-cv-01446-JAR |
| v. | ) | |
| | ) | |
| HON. CHARLES E. RENDLEN III,[1] | ) | |
| | ) | |
| Appellee. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the appeal of Appellant Ross H. Briggs ("Briggs") from the Bankruptcy Court's June 25, 2018 Order denying his motion to disqualify Judge Rendlen from ruling on Briggs's reinstatement. For the following reasons, the Court will affirm the decision of the Bankruptcy Court.

---

[1] When referencing Judge Rendlen in his capacity as Appellee, the Court will refer to said party as "Appellee." Otherwise, when referencing actions taken in the Bankruptcy Court proceedings, the Court will either refer directly to Judge Rendlen or to the Bankruptcy Court.

1

I. **Background**

As noted previously, these consolidated cases have a complex and complicated history. The following is a recitation of the facts that are relevant to this bankruptcy appeal, which includes a history of the Bankruptcy Court's various orders related to Briggs's conduct.

Since 2001, Briggs has had various business and contractual relationships with Critique Services,[2] a now defunct bankruptcy petition preparation company founded by Beverly Diltz. (Briggs Brief, Doc. No. 6, at 13). In June 2014, the Bankruptcy Court suspended one of the lawyers associated with Critique Services (James Robinson), and Briggs thereafter assumed the representation of many of Robinson's former Chapter 7 clients.

Following the resolution of a number of those cases, the Bankruptcy Court directed Robinson, Briggs, and Critique Services to turn over certain documents related to the disgorgement of attorney's fees.[3] (Bank. Ct. Doc. No. 47). They failed to comply, and, on July 6, 2015, the Bankruptcy Court indicated that it was contemplating the imposition of sanctions for noncompliance. (Bank. Ct. Doc. No. 70). During hearings related to the disgorgement of funds, Briggs made representations that he was not affiliated with Critique Services and was not in the "power circle," thus rendering him unable to answer questions or seek the documents and information sought by the Bankruptcy Court.

---

[2] Critique Services has operated under several different names. For purposes of this Memorandum & Order, the Court will generally refer to those entities as Critique Services.

[3] On December 12, 2014, the Chapter 7 Trustees in the underlying bankruptcy cases filed a motion to compel seeking turnover of documents and information necessary for the Trustees to comply with the Bankruptcy Court's directive that they account for property of the estate in the form of unearned attorney's fees that were collected by the Debtors' suspended former counsel, James Robinson. The Bankruptcy Court's January 23, 2015 Order granted this motion to compel.

2

On July 22, 2015, the Bankruptcy Court found these statements not credible, citing numerous connections between Briggs and Critique Services. The Bankruptcy Court advised Briggs that if he agreed to comply with a number of terms, including a six-month suspension, the Court would not impose additional sanctions on him or refer his misconduct to the Missouri Supreme Court's Office of Chief Disciplinary Counsel ("MO OCDC"). (Bank. Ct. Doc. No. 88). Briggs responded by denying his connection with Critique Services and requesting that the matter be transferred to this Court for a *de novo* hearing and determination. (Bank. Ct. Doc. No. 90). The Bankruptcy Court denied his request. (Bank. Ct. Doc. No. 91).

Following a flurry of filings by Critique Services, the Bankruptcy Court issued a 250-page order ("April 2016 Order") sanctioning Robinson, Briggs, and Critique Services for their failure to comply with the Bankruptcy Court's orders compelling turnover of documents. As relevant to this appeal, the April 2016 Order prohibited Briggs from filing any new bankruptcy cases for six months or using his login credentials on the Bankruptcy Court's online filing system ("CM-ECF"). Briggs was permitted to seek reinstatement on or after October 1, 2016. (Bank. Doc. No. 114).

Thereafter, Briggs then engaged in considerable litigation challenging the April 2016 Order. *See In re Reed, 2017 WL 44645* (E.D. Mo. Jan. 3, 2017) (Judge White); *In re Reed*, 2017 WL 994798 (E.D. Mo. March 15, 2017) (Judge Fleissig); *In re Reed*, 888 F.3d 930 (8th Cir. 2018). In each of those appeals, he sought the disqualification of Judge Rendlen on remand, all of which were denied.

On May 10, 2016, the Bankruptcy Court—on Briggs's motion—reinstated his right to file new cases for certain existing clients and to use the CM-ECF filing system because Briggs had provided an extensive statement to the Missouri Attorney General regarding his involvement with Critique Services. However, on June 29, 2016, the Bankruptcy Court again suspended Briggs's

3

ability to use CM-ECF after his login credentials were used to file a pleading signed by another attorney. (Bank. Ct. Doc. No. 153). The Bankruptcy Court also referred Briggs to MO OCDC.

On August 13, 2016, Briggs filed a motion seeking early reinstatement, citing completion of the continuing legal education requirements contained in the April 2016 Order. (Bank. Doc. No. 155). The Bankruptcy Court denied his request as premature. (Bank. Doc. No. 156).

In January 2017, Diltz was deposed in connection with a state investigation of Critique Services and testified that she had a close relationship with Briggs, that she had financial dealings with Briggs, and that she had received a "cash packet" from Briggs as recently as December 2016. On February 3, 2017, the Bankruptcy Court filed an Order referencing the Diltz deposition and notifying Briggs that if he sought reinstatement, he might have to to address whether he had any financial or professional involvement with Diltz or Robinson since the April 2016 Order, which prohibited him from any such involvement. (Bank. Ct. Doc. No. 162). The Bankruptcy Court again referred Briggs to MO OCDC. (Bank. Ct. Doc. No. 164).

On May 23, 2017, the Bankruptcy Court filed an Order notifying Briggs that if he sought reinstatement, he might have to address questions regarding representations made on his website that appeared to be misleading or false in light of his suspension. (Bank. Doc. No. 167). The Court also alerted the bar admission and regulation authorities of Illinois and Florida regarding representations made by Briggs on his website that he operates law businesses in those states, despite not being licensed in those states. On June 19, 2017, the Bankruptcy Court, at the suggestion of the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois, forwarded a copy of the relevant orders to the Bankruptcy Court for the Northern District of Illinois, as well as the Bankruptcy Court for the Middle District of Florida.

4

On September 26, 2017, Briggs initiated a miscellaneous proceeding seeking reinstatement from Chief Bankruptcy Judge Kathy Surratt-States. *In re Briggs*, Case No. 17-401-659 (E.D. Mo. Bank.). On November 6, 2017, Judge Surratt-States denied the request, holding that there was no basis for the relief requested under the local bankruptcy rules or the Rules of Disciplinary Enforcement for the District Court for the Eastern District of Missouri. *Id.* at Doc. No. 2. Shortly thereafter, on November 13, 2017, Briggs filed a petition seeking reinstatement from Chief District Judge Rodney W. Sippel. *In re Briggs*, 4:17-mc-00674-RWS. On December 15, 2017, Judge Sippel denied Briggs's motion for reinstatement for lack of jurisdiction, holding that "[c]learly, Briggs should seek reinstatement from Judge Rendlen directly." *Id.* at Doc. No. 5. Briggs appealed both decisions denying his motion for reinstatement. While the appeals were pending, the Bankruptcy Court filed a notice advising that Briggs could seek reinstatement, but that it would require a hearing. (Bank. Doc. No. 170).

On April 25, 2018, the Eighth Circuit affirmed the decisions of Judge Surratt-States and Judge Sippel, holding that Briggs should file his motion for reinstatement directly with Judge Rendlen. *In re Reed*, 888 F.3d at 940. The Eighth Circuit also denied Briggs's motion to disqualify Judge Rendlen on remand on the basis that the case was not being remanded.

On June 5, 2018, Briggs filed his motion for reinstatement with Judge Rendlen, as well as a motion to disqualify Judge Rendlen from presiding over his reinstatement. Judge Rendlen denied the motion to disqualify on June 25, 2018, on the grounds that the motion was untimely and that Briggs failed to meet his substantial burden of proving that the judge lacked impartiality. (Bank. Ct. Doc. 178). This appeal concerns the Bankruptcy Court's June 25 Order denying Briggs's motion to disqualify.

Briggs argues that the Appellee's failure to recuse himself was erroneous due to Appellee's "obvious interest in the matter, as evidenced by the *sua sponte* investigations and *ex parte* communications Judge Rendlen performed" after issuing sanctions, and when no motion for reinstatement had been filed. Briggs also points to Appellee's "prior—but as yet undisclosed—involvement in prior matters relating to the investigation and sanction of [Briggs]."[4] Lastly, Briggs argues that his motion was not untimely because he sought disqualification of Appellee as early as March and May 2017.

Appellee argues that he did not abuse his discretion when he denied the motion to disqualify. He maintains that Briggs's motion was untimely, as Briggs sought disqualification for the first time two years after the April 2016 Order. Appellee also argues that Briggs failed to meet the heavy burden required to establish disqualification. Lastly, Appellee maintains that he had no involvement in the investigation into Critique Services during his employment as a United States Trustee and that the record contains no evidence of bias or lack of impartiality.

## II. Jurisdiction

Under 28 U.S.C. § 158, "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . and with leave of the court, from other interlocutory orders and decrees." 28 U.S.C. § 158(a)(1) & (3); *In re Allen*, No. 4:18-CV-210-RLW, 2018 WL 3785170, at *2 (E.D. Mo. Aug. 9, 2018). An order denying a motion to disqualify is an interlocutory order, requiring an appellant to file a motion for leave to appeal the bankruptcy

---

[4] Here, Briggs is referring to Appellee's previous employment as a United States Trustee. Appellee served as a United States Trustee from 2003 until he took the bench in 2006. During that time, Assistant United States Trustees and trial attorneys in his office brought civil cases against Critique Services. (Resp. Brief, Doc. No. 27, at 14).

order under § 158(a)(3). *In re Moix-McNutt*, 215 B.R. 405, 407 (B.A.P. 8th Cir. 1997) (holding that the denial of a recusal motion is not a final order).

Here, Briggs failed to file a motion for leave to appeal. However, the Court on June 6, 2019 construed Briggs's notice of appeal as a motion for leave to appeal and granted the motion, thus allowing this bankruptcy appeal to proceed. *In re Brady*, 2019 WL 2392466, at *3 (June 6, 2019).

### III. Standard of Review

The parties dispute the appropriate standard of review. Briggs argues that the Bankruptcy Court's decision denying his motion to disqualify should be reviewed *de novo*. Appellee maintains that disqualification decisions are reviewed for abuse of discretion.

"Whether disqualification is required in a particular case is committed to the judge's sound discretion." *In re Hylton*, No. 4:17CV2773JCH, 2018 WL 2129618, at *7 (E.D. Mo. May 9, 2018) (citing *In re Kansas City Pub. Emps. Ret. Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996) (internal quotation marks omitted). Thus, a judge's determination regarding a motion for recusal will be reviewed only for an abuse of that discretion. *Id.*

Briggs, relying on *Stern v. Marshal*, 564 U.S. 462 (2011), argues that his appeal should be reviewed *de novo* because his underlying request for reinstatement implicates a private right to practice law that must be resolved by an Article III judge. (Doc. No. 23 at 32). In *Stern*, the bankruptcy court entered summary judgment on a counterclaim for tortious interference. 564 U.S. at 470-71. The United States Supreme Court held that the counterclaim could only be resolved by an Article III court because it involved the entry of a final, binding judgment by a court with broad

7

substantive jurisdiction on a common law cause of action that neither derives from nor depends upon any agency regulatory scheme. *Id.* at 498.

The Court notes that Briggs previously raised this argument in a prior appeal. *See In re Reed*, 888 F.3d at 935. There, Briggs argued that as an Article I court, the bankruptcy court did not have the constitutional authority to sanction him. The Eighth Circuit disagreed, holding that the August 2016 Order imposing sanctions "stemm[ed] from the bankruptcy itself" and did not implicate the sort of claim to which *Stern* applies. Thus, the Eighth Circuit held that "the bankruptcy court had authority to enter sanctions for events that occurred while trying to enforce the orders compelling turnover and the show-cause orders." 888 F.3d at 935.

Similarly, the motion to disqualify here stems directly from the sanctions imposed under the April 2016 Order, including Briggs's suspension. Briggs is now seeking reinstatement and wishes for Judge Rendlen to recuse himself from ruling on that motion. Thus, the order regarding disqualification stems directly from the bankruptcy proceeding itself and, like *In re Reed*, the decision is within the authority of the Bankruptcy Court. Accordingly, the Court will review the Bankruptcy Court's decision denying disqualification for abuse of discretion. *See In re Hylton*, 2018 WL 2129618, at *7 (district court reviewing the bankruptcy court's refusal to recuse itself).

### IV. Discussion

Timeliness

"Motions for recusal under 28 U.S.C. § 455 'will not be considered unless timely made.'" *Tri-State Fin., LLC v. Lovald*, 525 F.3d 649, 653 (8th Cir. 2008) (quoting *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003). "The timeliness doctrine under § 455 requires a party to raise a claim at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Id.* (internal quotation and citation omitted).

"A party is required to bring its recusal motion promptly to avoid the risk that the party might hold its application as an option in the event the trial court rules against it." *Id.* (citation omitted); *see also In re Kan. Pub. Employees Ret. Sys.*, 85 F.3d 1353, 1360 (8th Cir. 1996) (stating that § 455 requires "timely action" and that "[m]otions to recuse should not be viewed as . . . additional arrow[s] in the quiver of advocates in the face of [anticipated] adverse rulings."). A district court may take into account whether a litigant is seeking recusal for suspect tactical and strategic reasons. *See In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig.*, 623 F.3d 1200, 1209 (8th Cir. 2010) (finding that the recusal motion was a device used for suspect tactical and strategic reasons following the district court's adverse rulings).

This Court agrees with and affirms the Bankruptcy Court's determination that Briggs's motion to disqualify is untimely. The facts allegedly giving rise to disqualification occurred "as early as June 2016." (Briggs Brief, Doc. No. 23, at 43). Briggs could have filed his motion at that time, or in October 2016, when Briggs had the ability to seek reinstatement. However, Briggs failed to file any motions to disqualify with Judge Rendlen in 2016 or 2017. Instead, he sought reinstatement from other sources, including the chief bankruptcy judge, the chief district court judge, pursued lengthy challenges to the April 2016 Order, and sought disqualification of Judge Rendlen on appeal.

After careful review of the record, the Court can only conclude that Briggs engaged in tactical litigation in the face of an anticipated adverse ruling by Judge Rendlen on his motion for reinstatement. Accordingly, under these circumstances the decision to deny Briggs's motion to disqualify as untimely was well within the Bankruptcy Court's discretion, and the decision will be affirmed. However, even if timely, Briggs did not meet his burden required for disqualification.

Motion to Disqualify

A federal judge is required to disqualify himself or herself "in any proceeding in which [his or her] impartiality might reasonably be questioned," or where he or she "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(a) & (b)(1). "In cases where a judge's impartiality might reasonably be questioned, the issue for consideration is not whether the judge is in fact subjectively impartial, but whether the objective facts suggest impartiality." *In re Hylton*, 2018 WL 2129618, at *7 (citations omitted).

"[W]hether disqualification is required in a particular case is committed" to the judge's sound discretion, and a judge's determination regarding a motion for recusal will be reviewed only for an abuse of that discretion. *In re Kansas City Pub. Emps. Ret. Sys.*, 85 F.3d at 1358 (citing *Perkins v. Spivey*, 911 F.2d 22, 33 (8th Cir. 1990)). This is so because:

> [t]he judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion. In deciding whether to recuse himself, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case.

*Id.* (quoting *In re Drexel Burnhan Lambert, Inc.*, 861 F.2d 1307, 1312 (2nd Cir. 1998)).

Accordingly, there is a presumption that the Bankruptcy Court was impartial. *In re Hylton*, 2018 WL 2129618, at *7. Briggs bears "the substantial burden of proving otherwise." *Kansas City Public Employees*, 85 F.3d at 1358 (citation omitted).

Here, Briggs has failed to offer any evidence that Appellant was involved in any investigation as a Trustee such that disqualification would be required under 28 U.S.C. § 455(b)(1) (requiring judges to disqualify where he has "personal knowledge of disputed evidentiary facts concerning the proceeding"). Further, the Eighth Circuit has previously held that there was no

10

evidence that Appellee was involved in the investigation of Critique Services. Thus, there is no basis for Briggs's assertion that Appellee, in his capacity as United States Trustee, previously investigated Briggs. *See In re Stewart*, 828 F.3d at 682. Moreover, like in *Stewart*, Appellee's Orders contravene those allegations. Accordingly, Briggs's own, baseless assertion that Appellee had previously investigated Briggs is insufficient to overcome the substantial burden of proving that Appellee was not impartial.

Similarly, Briggs's other complaints about Appellee's conduct do not satisfy this high bar. Briggs argues that several actions taken by Appellee since April 2016 demonstrate that Appellee's impartiality could reasonably be questioned. These acts include: visiting Briggs's firm website and reviewing representations contained therein; reviewing a deposition transcript in a matter unrelated to any bankruptcy matter; and sanctioning Briggs for a filing error in another case before another bankruptcy judge.

Briggs' argument overlooks the fact that "[A] suspended attorney still holds his office as an attorney and is subject to the jurisdiction of the court." *In re Moncier*, 569 F. Supp. 2d 725, 728 (E.D. Tenn. 2008) (citing *In re Mitchell*, 901 F.2d 1179, 1183 n. 5 (3d Cir. 1990)). Based on the record, the Court concludes that the Bankruptcy Court was properly exercising its authority to monitor a suspended attorney who remained under its jurisdiction. Upon learning of potential violations of the April 2016 Order, the Bankruptcy Court provided Briggs with notice that those violations would have to be explained prior to reinstatement. This, without something more, does not satisfy the "heavy burden of proof" to overcome the presumption of impartiality. At most, Appellee may be ill-disposed toward Briggs because of Briggs own misconduct, or frustrated with Briggs's conduct over the course of several years, which appears to have been marked by frivolous and excessive litigation. This is insufficient to mandate disqualification. *In re Stewart, United*

11

States v. Rubashkin, 655 F.3d 849, 858 (8th Cir. 2011) (holding that disqualification is not necessarily required even after a trial court judge expresses "impatience, dissatisfaction, annoyance, and even anger toward party"). Thus, the Court concludes that Appellee did not abuse his discretion when he denied Briggs's motion to disqualify.

V.  **Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that the judgment of the Bankruptcy Court is **AFFIRMED**.

A separate judgment will accompany this Memorandum and Order.

Dated this 26th day of September, 2019.

*[signature: John A. Ross]*

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**